IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| TAMMY PUTNAM, | ) |
|                Plaintiff, | ) No. 2:18-cv-3524-DCN-MGB |
| vs. | ) |
| | ) **ORDER** |
| ANDREW SAUL, Acting Commissioner of Social Security,[1] | ) |
|                Defendant. | ) |

This matter is before the court on Magistrate Judge Mary Gordon Baker's Report and Recommendation ("R&R") that the court reverse Acting Commissioner of Social Security Andrew Saul's (the "Commissioner") decision denying claimant Tammy Putnam's ("Putnam") application for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). The Commissioner filed objections to the R&R. For the reasons set forth below, the court reviews the action de novo, reverses the decision of the Commissioner, and remands the matter for further consideration consistent with this order.

## I. BACKGROUND

Unless otherwise noted, the following background is drawn from the R&R.

**A. Procedural History**

Putnam filed an application for DIB on December 24, 2014, alleging an onset disability date of September 30, 2013. The Social Security Administration ("the

---

[1] Andrew Saul is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul is automatically substituted for Nancy A. Berryhill, former Commissioner, as the defendant in this lawsuit.

Agency") denied Putnam's application both initially and on reconsideration. Putnam requested a hearing before an administrative law judge ("ALJ"), and ALJ Colin Fritz presided over a hearing held on August 2, 2017. In a decision issued on January 5, 2018, the ALJ determined that Putnam was not disabled within the meaning of the Act. Putnam requested Appeals Council review of the ALJ's decision on February 28, 2018. This decision became the final decision of the Commissioner when the Appeals Council denied further review on November 8, 2018.

On December 20, 2018, Putnam filed this action seeking review of the ALJ's decision. ECF No. 1. Magistrate Judge Baker issued an R&R on October 10, 2019, recommending that this court reverse the ALJ's decision and remand the matter back to the Commissioner. ECF No.15. The Commissioner filed an objection to the R&R on October 24, 2018, ECF No. 16, and supplemented his objection on October 28, 2018, ECF No. 18. Putnam responded on November 7, 2019, ECF No. 19. The matter is now ripe for review.

**B. Medical History**

Because the parties are familiar with Putnam's medical history, the court dispenses with a lengthy recitation thereof and instead briefly recounts those facts material to its review of the Commissioner's objections to the R&R. Prior to her alleged disability onset date, Putnam worked for Clemson University as a utility database administrator. Putnam took an extended leave from work in September of 2013 due to issues with her spine and neck. When she expended the time allotted to her for medical leave, Putnam stopped work entirely. Over the next few years, Putnam struggled with medical issues related to her neck, back, and shoulder, as well as with anxiety and

depression. During that time, Putnam was diagnosed with, among others, lumbar degenerative disc disease, shoulder impingement, headaches, neuralgia, arthropathy, cervical radiculitis, and obesity.

C. **ALJ's Decision**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. The Social Security regulations establish a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520, 416.920. Under this process, the ALJ must determine whether the claimant: (1) is currently engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment which equals an impairment contained in 20 C.F.R. § 404, Subpt. P, App'x 1, which warrants a finding of disability without considering vocational factors; (4) if not, whether the claimant has an impairment which prevents him or her from performing past relevant work; and (5) if so, whether the claimant is able to perform other work considering both his or her remaining physical and mental capacities (defined by his or her residual functional capacity) and his or her vocational capabilities (age, education, and past work experience) to adjust to a new job. See 20 C.F.R. § 404.1520; Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981). The applicant bears the burden of proof during the first four steps of the inquiry, while the burden shifts to the Commissioner for the final step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)). "If an applicant's claim fails

at any step of the [sequential evaluation] process, the ALJ need not advance to the subsequent steps." Id. (citing Hunter, 993 F.2d at 35).

To determine whether Putnam was disabled from her alleged onset date of September 30, 2013 until August 2, 2017, the date of Putnam's hearing, the ALJ employed the statutorily required five-step evaluation process. At step one, the ALJ found that Putnam did not engage in substantial gainful employment during the period between her alleged onset date and her date of last insured. Tr. 37. At step two, the ALJ determined that Putnam suffered from the severe impairments of status-post cervical fusion, lumbar degenerative disc disease, left shoulder impingement, headaches, and obesity. Tr. 37–38. At step three, the ALJ found that Putnam's impairments or combination thereof did not meet or medically equal one of the impairments listed in the Agency's Listing of Impairments. Tr. 38–39. Before reaching the fourth step, the ALJ determined that Putnam retained the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR [§] 404.1567(b)," noting that "over the course of an 8-hour workday, in 2-hour increments with normal and acceptable work breaks," Putnam can

> occasionally climb ramps and stairs, crouch and crawl. She can occasionally stoop to lift within the exertional level from the floor to the waist. She can frequently stoop to lift within the exertional level from waist height and above. She can frequently balance and kneel. Bilateral overhead reaching and handling can be performed frequently within the exertional level. She can occasionally be exposed to hazards associated with unprotected dangerous machinery or unprotected heights. She can concentrate, persist and maintain pace sufficient to understand, remember and carry out simple, routine tasks in a low stress work environment . . . involving simple work-related decisions, occasional independent judgment skills and occasional work place changes.

Tr. 39–40. The ALJ found, at the fourth step, that Putnam was unable to perform her past relevant work as an administrative assistant or billing supervisor. Tr. 44. However, at step five, the ALJ determined that, based on her RFC, Putnam can perform jobs that exist in significant numbers in the national economy. Tr. 44–46. Therefore, the ALJ concluded that Putnam was not disabled under the meaning of the Act during the period at issue. Tr. 46.

## II. STANDARD

This court is charged with conducting a de novo review of any portion of the Magistrate Judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the Magistrate Judge. See Thomas v. Arn, 474 U.S. 140, 149-50 (1985). The recommendation of the Magistrate Judge carries no presumptive weight, and the responsibility to make a final determination rests with this court. Mathews v. Weber, 423 U.S. 261, 270-71 (1976).

Judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id. (internal citations omitted). "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence." Id. Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is

disabled, the responsibility for that decision falls on the [ALJ]," not on the reviewing court. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citation omitted).

Although the district court's role is limited, "it does not follow . . . that the findings of the administrative agency are to be mechanically accepted. The statutorily granted review contemplates more than an uncritical rubber stamping of the administrative action." Flack v. Cohen, 413 F.2d 278, 279 (4th Cir. 1969). Further, although the court will not reweigh the evidence considered, the Commissioner's findings of fact are not binding where they are based on an improper legal standard. Coffman v. Bowen, 829 F.2d 514, 519 (4th Cir. 1987).

### III. DISCUSSION

Before turning to the substantive issues of this action, the court must resolve the unique procedural predicament this matter presents. Putnam's action seeking review of the final decision of the Commissioner, first presented to Magistrate Judge Baker, alleged two errors by the ALJ that she claimed warranted reversal. First, Putnam argued that the ALJ erred in relying on testimony from the Vocational Expert ("VE") that was inconsistent with information in the Dictionary of Titles ("DOT") without sufficiently explaining the discrepancy. Second, Putnam argued that the ALJ failed to properly evaluate the opinion evidence of her physicians. Considering the former allegation of error, the R&R noted the well-settled Fourth Circuit precedent that "an ALJ has not fully developed the record if it contains an unresolved conflict between the VE's testimony and the DOT." ECF No. 15 at 8 (citing Henderson v. Colvin, 643 F. App'x 273, 277 (4th Cir. 2016)). At the time the Magistrate Judge filed the R&R, there was a split of authority within the Fourth Circuit regarding whether a finding that a claimant is limited

6

to simple, routine work conflicts with a finding that the claimant is capable for work at a GED Reasoning Level 2. The R&R correctly stated that district courts in the District of South Carolina have routinely found that such a situation does present a conflict. ECF No. 15 at 10 (collecting cases). Thus, the R&R found that Putnam's first allegation of error warranted reversal and declined to address her second allegation of error.

The Magistrate Judge filed the R&R on October 10, 2019. On October 24, 2019, the Fourth Circuit resolved the split among the district courts when it issued its opinion in Lawrence v. Saul, 941 F.3d 140 (4th Cir. 2019). There, the Fourth Circuit disagreed with the approach of the South Carolina district courts and announced that no conflict exists between VE testimony that a claimant is capable of "simple, routine, repetitive tasks of unskilled work" and a finding that a claimant is capable of work at the DOT's GED Reasoning Level 2. Id. at 143. In other words, after the Magistrate Judge filed the R&R, which came down on one side of the split of authority, the Fourth Circuit ruled in favor of the other.

On October 28, 2019, the Commissioner filed a supplement to his objection, arguing that Lawrence v. Saul conclusively establishes that Putnam's first alleged error does not warrant reversal. ECF No. 18. Because the Commissioner concludes that Putnam's first alleged error is no longer viable, he asks that the court affirm the decision of the Commissioner. In response, Putnam concedes that Lawrence v. Saul renders her first objection meritless but correctly notes that the failure of her first allegation of error does not require the court to affirm the decision of the Commissioner. Instead, Putnam asks this court to review her second allegation of error de novo, despite the Magistrate Judge not addressing the issue.

28 U.S.C. § 636 outlines the procedure as it relates to a district court's review of a Magistrate Judge's R&R:

> Within fourteen days after being served with a copy [of an R&R], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636. "While [§ 636] does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard." Thomas v. Arn, 474 U.S. 140, 154 (1985).

Here, justice demands a de novo review of Putnam's second allegation of error. Because the R&R recommended a favorable finding based on then-current Fourth Circuit law, Putnam had no reason to address his second allegation of error in front of this court. Moreover, this court has access to the same evidentiary record and briefs that were before the Magistrate Judge, such that neither party will be prejudiced by the court's review. Therefore, finding that Putnam's first allegation of error has been rendered untenable, this court undertakes a de novo review of her second argument on appeal.

In her second allegation of error, Putnam argues that the ALJ improperly evaluated the medical opinions her treating primary care physician, Dr. Miller, and a consultative examiner, Dr. Rogers. Putnam contends that the ALJ erred in the process of evaluating the opinions as well as in his finding that the opinions did not warrant great weight. In response, the Commissioner argues that the ALJ's assignments of weight to

Putnam's physicians' opinions were based upon the correct legal standard and supported by substantial evidence. Because the ALJ's assignment of little weight to Dr. Miller's opinion is not supported by substantial evidence, his evaluation of the medical opinion evidence constitutes error and warrants reversal.

### A. Opinion of Dr. Miller

Medical opinions are "statements from acceptable medical sources that reflect judgments about the nature and severity of [] impairment(s), including [] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).

Under the "treating physician rule," the opinion of a claimant's treating physician is generally entitled to significant weight in the determination of disability. See Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983). In fact, the regulations demand that a medical opinion from a treating source be afforded "controlling weight" where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). The Fourth Circuit has noted the treating physician rule's good sense:

> treating physicians are given more weight . . . since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone[].

Lewis v. Berryhill, 858 F.3d 858, 867 (4th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)) (internal quotation marks omitted). Accordingly, an ALJ may afford a treating physician's medical opinion little weight "only if there is persuasive contradictory evidence." Mitchell, 699 F.2d at 187.

Dr. Miller articulated several medical findings in his opinion, each of which is either partially or wholly contrary to the ALJ's determination of Putnam's RFC. Dr. Miller opined that (1) Putnam cannot lift more than ten pounds; (2) Putnam cannot squat, stoop, or climb; (3) Putnam cannot sit for more than an hour without rest; (4) Putnam cannot walk more than 100 yards without back pain; and (5) Putnam's limitations and symptoms prevent her from returning to work activity.[2]  Tr. 727–28.

There is no dispute that Dr. Miller is Putnam's primary physician such that his opinion triggers the treating physician rule's deferential evaluation standard. Indeed, the ALJ noted that Dr. Miller is Putnam's "primary care provider" who has treated her for "8-10 years." Tr. 41. Nevertheless, the ALJ departed from the treating physician rule and afforded Dr. Miller's medical opinion little weight[3] on three primary grounds: (1) the opinion "lacks a function-by-function analysis," (2) Dr. Miller "renders an opinion that is reserved solely to the Commissioner," and (3) "the severity of the limitations are

---

[2] Conversely, the ALJ found that "over the course of an 8-hour workday, in 2-hour increments," Putnam can "occasionally climb ramps and stairs, crouch and crawl. She can occasionally stoop to lift within the exertional level from the floor to the waist. She can frequently stoop to lift within the exertional level from waist height and above. She can frequently balance and kneel. Bilateral overhead reaching and handling can be performed frequently within the exertional level . . ." Tr. 39–40.

[3] In his decision, the ALJ claims to give Dr. Miller's opinion "some" and/or "partial" weight. Tr. 43. Despite these labels, the ALJ failed to incorporate a single medical finding of Dr. Miller's opinion into his determination of Putnam's RFC. As such, the court finds that the ALJ gave Dr. Miller's opinion "little weight," despite his labels of "some" and "partial" weight.

10

not supported in the longitudinal medical record." Tr. 43. Additionally, the ALJ noted that the opinion was expressed in an "attorney-drafted questionnaire." Although the ALJ did not specifically state that the nature of the questionnaire was a ground for his evaluation of Dr. Miller's opinion, his mentioning the questionnaire within his analysis warrants a discussion.[4] The court addresses each ground in turn, finding that each is either based on an improper standard of law or unsupported by the substantial weight.

1. **Function-By-Function Analysis**

As one of the bases for according little weight to Dr. Miller's opinion, the ALJ explained that the opinion lacks a "function-by-function" analysis. The court is perplexed by this ground because it is both based upon an incorrect legal standard and, even if the "function-by-function" standard were applicable here, unsupported by the substantial evidence.

The Social Security Rulings emphasize that an ALJ's:

> RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

SSR 96-8p, 1996 WL 374184, at *1. The Fourth Circuit has held that "remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions[]." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015). It is clear, then, that the requirement of a function-by-function analysis applies to the ALJ. It does not apply to treating physicians, and it is not a means by which an ALJ can discredit the opinion of

---

[4] The court finds it reasonable to assume that when an ALJ includes a fact from the record in his analysis of the evidence, he actually considers that fact in his evaluation.

11

a treating physician. An ALJ may only discredit the opinion of a treating physician where the "opinion is not supported by clinical evidence or[] is inconsistent with other substantial evidence." Craig, 76 F.3d at 590.

The ALJ's notion that a treating physician's opinion is entitled to less weight because it fails to articulate a function-by-function analysis lacks any legal or logical support. SSR 96-8 imposes a requirement upon the ALJ; the ALJ's attempt to impose SSR 96-8 upon a treating physician is deeply troubling. There is no requirement in the regulations or elsewhere that a physician must justify his medical findings or his diagnoses to an ALJ through the articulation of a function-by-function analysis. In his briefs, the Commissioner cites to no law that might suggest that an ALJ may evaluate a treating physician's opinion on this ground, and the court is confident that no such law exists. An ALJ may not mandate the methods by which a physician reaches his or her medical opinions. Therefore, the court finds that a physician's failure to articulate a function-by-function justification of his opinion is not a proper ground for an ALJ to discredit that physician's opinion.

Perhaps even more baffling, although not required by any law, Dr. Miller's opinion does in fact include a function-by-function analysis. Paragraph (b) of 20 CFR 404.1545 lists out applicable functions that an ALJ must include in her analysis of a claimant's RFC, including "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching)." Although Dr. Miller's ultimate opinion—that Putnam's limitations prevent her from working—is conclusive, his opinion includes a function-by-function analysis justifying that conclusion. Dr. Miller notes Putnam's

limitations with respect to her ability to lift more than ten pounds, squat, stoop, climb, sit for extended periods of time, and walk extended distances. These are the very functions contemplated by paragraph (b) of 20 CFR 404.1545. Therefore, the court finds that the ALJ's evaluation of Dr. Miller's opinion was based on an improper standard of law and contrary to the substantial evidence.

### 2. Conclusion Reserved to the Commissioner

Second, the ALJ afforded little weight to the opinion of Dr. Miller because it "renders a conclusion that is reserved solely to the Commissioner." Tr. 43. The regulations provide that "[o]pinions on some issues . . . are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case," such as "a statement by a medical source that [a claimant is] 'disabled' or 'unable to work'." 20 C.F.R. § 404.1527.

To be sure, the regulations make clear that the issue of Putnam's ability to work requires an administrative finding reserved solely to the Commissioner. Dr. Miller did opine that Putnam is not capable of returning to work activities based on her impairments. Tr. 728. This opinion fits squarely within the type of conclusory opinion that 20 C.F.R. § 404.1527 reserves to the Commissioner and allows an ALJ to disregard. However, § 404.1527 does not give the ALJ any grounds for discrediting Dr. Miller's medical opinions related to Putnam's functional capacity. The ALJ's ability to discredit a treating physician's conclusory administrative opinion does not give him grounds to discredit that physician's non-administrative, medical findings. 20 C.F.R. § 404.1527 does not provide the ALJ with a proper ground to discredit opinions of Dr. Miller, other than his opinion that Putnam is unable to work due to her limitations. His failure to give

13

controlling weight to Dr. Miller's other medical findings remains without legal justification.

### 3. Inconsistencies in the Medical Record

Finally, the ALJ assigned Dr. Miller's opinion little weight because "the severity of the limitations are [sic] not supported by the longitudinal medical record." Tr. 43. Specifically, the ALJ pointed to perceived inconsistencies within the medical record to determine that Dr. Miller's opinion was not credible. An ALJ may depart from the treating physician rule and accord a treating physician's opinion little weight only in the face of "persuasive contradictory evidence." Mitchell, 699 F.2d at 187. Therefore, the question before the court is whether the "inconsistencies" in the record upon which the ALJ relied are persuasive and contrary to Dr. Miller's opinions. Because they are neither, the court finds that the ALJ's evaluation of Dr. Miller's opinion was not supported by substantial evidence.

"An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017) (quoting Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010)). When an ALJ discredits the opinion of a treating physician based on a curation of cherry-picked evidence, he "substitutes [his own] opinion for those of [a] medical provider[]", and engages in the prohibited practice of "playing doctor." Cohen v. Berryhill, 272 F. Supp. 3d 779, 782 (D.S.C. 2017) (quoting and citing Lewis, 858 F.3d at 869). Where a treating physician's opinion is consistent with the comprehensive medical record, an ALJ cannot discredit that opinion based on isolated, perceived inconsistencies. As this court has succinctly

stated, "The ALJ is not entitled simply to reject opinions in which he personally disagrees." Id. at 783.

The ALJ pointed to several pieces of the record as inconsistent with Dr. Miller's opinion: (1) an improvement in Putnam's symptoms after a March 2014 cervical discectomy; Tr. 436–437; (2) a note that degenerative deficits in her spine did not merit surgery in March of 2015, Tr. 645–47; (3) notes of normal leg-raising and strength tests, Tr. 735; and (4) instances in Putnam's physician's notes that refer to normal conditions or symptom improvements, Tr. 642, 645. None of these isolated pieces of evidence persuasively contradict the medical opinions of Dr. Miller. Just as numerous in the record, and often within the same reports on which the ALJ relied, is evidence of failed strength tests, diagnoses of severe conditions, MRIs indicating spinal diseases, failures of conservative treatment measures, reports of debilitating pain, and recommendations of surgery, among other evidence that weighs in favor of a finding of disability.

As the law makes clear, an ALJ cannot dredge up a physician's notations of positive aspects of a patient's health as a basis for rejecting his or her conclusions. Surely, the ALJ is not in a position to conclude that Putnam can lift a certain amount of weight based on, for example, the fact that her condition didn't warrant surgery in March of 2015. A medical provider is in a substantially better position to consider and interpret the comprehensive medical record, including consideration of the "inconsistencies" noted by the ALJ, and render a medical conclusion. Just as an ALJ may not point to one healthy tissue of a claimant's lung and conclude that a physician's diagnosis of black lung is unsupported, he may not point to a healthy body function as evidence that a treating physician's opinion is incorrect. The treating physician rule is founded upon the

recognition that a treating physician can more effectively analyze the medical record and render a medical opinion than an ALJ. Therefore, the court finds that the ALJ's evaluation of Dr. Miller's opinion is based on an improper standard of law and against the substantial evidence.

### 4. Attorney-Drafted Questionnaire

Finally, the ALJ noted that Dr. Miller's opinions are recorded in "an attorney-drafted questionnaire." Tr. 43. This is not a proper consideration in evaluating the opinion of a treating physician.

"The purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them. The Ninth Circuit has found that "[a]n examining doctor's findings are entitled to no less weight when the examination is procured by the claimant than when it is obtained by the Commissioner." Lester v. Chater, 81 F.3d 821, 832 (9th Cir. 1995), as amended (Apr. 9, 1996). In so holding, the Ninth Circuit stated that "[t]he [Commissioner] may not assume that doctors routinely lie in order to help their patients collect disability benefits." Id. (quoting Ratto v. Secretary, 839 F.Supp. 1415, 1426 (D. Or. 1993)). This court, like others in this district, agrees. See Cureton v. Astrue, 2011 WL 903032, at *17 (D.S.C. Jan. 28, 2011), report and recommendation adopted, 2011 WL 900118 (D.S.C. Mar. 15, 2011) ("The mere fact that a claimant's representative or attorney arranged to have a medical examination performed should not determine the consideration the ALJ gives that opinion."). Therefore, the fact that Dr. Miller's opinions were obtained through an attorney-drafted questionnaire does not give the ALJ a basis for discrediting his opinion. In sum, the court finds that the ALJ was required to give Dr. Miller's non-conclusive medical opinions controlling weight under the treating physician

16

rule because his opinions were not conflicted by persuasive contrary evidence in the record. Accordingly, the ALJ's assignment of little weight to Dr. Miller's opinions constitutes error and warrants reversal.

**B. Opinion of Dr. Rogers**

Because the court finds the ALJ's mistreatment of the Dr. Miller's opinion a sufficient basis to remand the case to the Commissioner, the Court declines to specifically address Putnam's additional allegation of error by the ALJ. However, upon remand, the Commissioner should take into consideration Putnam's remaining allegation of error and analyze the opinion of Dr. Rogers according to the framework provided in 20 C.F.R. § 404.1527(c).[5]

---

[5] If a treating physician's opinion does not merit controlling weight, the ALJ is to evaluate it using the following evaluation factors: (1) whether the physician has examined the applicant; (2) the nature and extent of the treatment relationship; (3) the extent to which the opinion is supported by relevant medical evidence; (4) the extent to which the opinion is consistent with the record as a whole; (5) the relevance of the physician's medical specialization to the opinion; and (6) any other factor that tends to support or contradict the opinion. While an ALJ is not required to include an explicit discussion of the evaluation factors in her decision, she is nevertheless bound by the analytical framework they provide. Hendrix v. Astrue, 2010 WL 3448624, at *3 (D.S.C. Sept. 1, 2010).

## IV. CONCLUSION

For the foregoing reasons the court **REVERSES** the decision of the Commissioner and **REMANDS** the matter to the Commissioner for further administrative action consistent with this order.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**February 5, 2020
Charleston, South Carolina**